ALLYN M. COLEGROVE *vs.* CHARLES L. SNOW AND ANOTHER.

The plaintiff, being interested as a large bondholder in the early completion of a railroad, procured a quantity of timber for its bridges, specially prepared for that purpose, to have it ready when wanted. The timber was his own private property and he was under no obligation to furnish it for the road. A firm who subsequently contracted with the railroad company to complete the road and supply all the materials required, applied to him for the timber to use in the construction of the bridges, and he told them that they might have it. No terms were agreed upon and there was no express agreement that it should be used in constructing the bridges, but it was so understood on both sides. The plaintiff delivered the timber to the firm, who were transporting it to the place where it was to be used when it was attached by creditors of the railroad company. Held that the transaction amounted to a sale to the firm, and that the plaintiff could not maintain replevin for the recovery of possession of it from the parties attaching it.

REPLEVIN for a quantity of timber; brought to the Superior Court in Middlesex County. Facts found by a committee and the case reserved for advice. The case is fully stated in the opinion.

*R. G. Pike* and *S. E. Baldwin,* for the plaintiff.

*D. Chadwick* and *C. E. Perkins,* for the defendants.

GRANGER, J. In March, 1873, the property described in the declaration, consisting of a certain quantity of railroad bridge timber, was attached by the defendants, as the property of the New Haven, Middletown and Willimantic Railroad Company, and the plaintiff has brought an action of replevin therefor. The committee to whom the case was referred finds that the property did not belong to the railroad company, but that it was the property of the plaintiff, unless in law he lost his title by reason of the following facts.

The plaintiff bought the timber in question for the purpose of being used in the construction of the New Haven, Middletown and Willimantic railroad. It was specially cut or sawed for the viaduct bridges or trestle-work. Subsequently a contract was entered into between the railroad company and a firm by the name of Richardson & Co., to complete the construction of the railroad, the firm providing all the material.

Afterwards and about two weeks before the attachment of the timber, White, a partner of Richardson & Co., told the plaintiff that he wanted this timber to use in the construction of the viaduct bridges, and he told him he might have it; and thereupon it was placed by the track of the railroad so that it could be taken on the cars and removed to the place where it was wanted. A part of it was carried to the viaduct by White, and while the remainder was being taken by him upon the cars it was attached by the defendants.

It was understood between the plaintiff and White that White was to take the timber, and use it for the benefit of Richardson & Co. in building the road, under their contract, but there was no express agreement to this effect, and no agreement or understanding as to the terms upon which the timber was to be taken by them. At the time the plaintiff bought the timber the railroad company was insolvent and without means. He was the owner of a large amount of first mortgage bonds of the company, and was anxious to have the road completed at an early day. He bought the timber and held it to avoid the delay which would attend the working out of new timber, but was under no legal obligation to let it go into the road. When the plaintiff talked with White about the latter's having the timber, it was piled up some distance from the road, and the plaintiff afterwards, by his own agents and at his own expense, carted it to the road. From that time until it was attached by the defendants the plaintiff did nothing more about it.

Upon these facts the question is, in whom was the legal title or right of immediate possession of the property at the time it was attached? The committee finds as a fact that it did not belong to the railroad company. It must then have been the property either of the plaintiff or of Richardson & Co. The plaintiff claims that the timber was his, that he had a general or special property in it, with a right to its immediate possession. The burden of sustaining this claim rests upon him. Do the facts disclosed sustain his claim? A majority of the court think that they do not, but that they show quite clearly that the plaintiff had parted with his title

to the timber, and that he had no general or special property in it, and no right of immediate or any other possession at the time of the attachment.

It is apparent that the facts show, either a sale, a loan, or a gift. No claim is made by the plaintiff that it was the last; in fact if that claim was sustained it would be fatal to his right of recovery. But the plaintiff's claim is that the facts show a mere license to Richardson & Co. to take the timber, and that it was revocable at his pleasure, and that he had a right to seize the timber in whosesoever hands he found it. This claim is altogether too broad, and is not warranted by the facts, and clearly does not accord with the intention of the parties as declared by the finding. The timber was prepared for a particular use, namely, the construction of viaduct bridges. It was purchased by the plaintiff for that very use, and it was for that use that White wanted the timber, and for that use that the plaintiff told him he might have it. For the same use and purpose the timber was put into the possession of Richardson & Co., who had made a contract with the railroad company to complete the road, and to provide all the materials. There was no stipulation between the parties that the timber was to remain the property of the plaintiff until it was paid for, and he permitted White on behalf of Richardson & Co. to take unqualified possession of the timber, and to use it as the property of Richardson & Co.; and if they had actually used the timber in the construction of viaduct bridges it could not with any propriety be claimed that the plaintiff would have any right to retake the timber, for it then would have become a part of the roadbed, and of course would have been the property of the railroad company. Nor was there any condition attached to the transaction that the timber was to remain the property of the plaintiff until it should be used in the construction of the viaduct bridges, or that he should have any right to re-possess himself of it unless it was so used. The purpose for which the property was obtained precludes the idea that it was a loan or any species of bailment, and the finding shows all the elements essential to a sale. There was a request on the part of Richardson & Co. for the

timber, there was assent on the part of the plaintiff to the request, and the timber was delivered by him, and accepted by them, and it is of no moment that the price was not agreed upon or time of payment fixed. The law under these circumstances would impose upon Richardson & Co. the obligation to pay what the timber was reasonably worth, and allow a reasonable time for the purpose.

We advise judgment for the defendants.

In this opinion PARK, C. J., and PARDEE, J., concurred; CARPENTER, J., dissented. LOOMIS, J., did not sit.

CARPENTER, J. I cannot concur. I think there was no sale; neither party intended the transaction as a sale. The plaintiff owned the property; he had a large pecuniary interest in the completion of the railroad; it was competent for him to allow his own property to be used in the construction of the road; and I think he might well retain the title in himself until the property was actually incorporated in the railroad structure. The contractors for finishing the road had no title in fact; and whatever rights they may have had in the property, I think it is very clear that these defendants cannot avail themselves of those rights as a defense. The plaintiff's title must be good as against the defendants, who are mere trespassers.